UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In Re

CELLO ENERGY, LLC   Case No. 10-04877-MAM-11

BOYKIN TRUST, LLC   Case No. 10-04931-MAM-11

JACK BOYKIN   Case No. 10-04930-MAM-11

Debtors

## ORDER DENYING CONFIRMATION OF DEBTORS' PLAN OF REORGANIZATION BUT ALLOWING LIMITED TIME FOR AMENDMENT

C. Michael Smith and Suzanne Paul, Attorneys for the Debtors Boykin Trust, LLC and Jack Boykin, Mobile, Alabama
Marcus E. McDowell, Attorney for Debtor Cello Energy, LLC, Bay Minette, Alabama
Jeremy L. Retherford, W. Joseph McCorkle, John Leach, Attorneys for Parsons & Whittemore Enterprises Corporation, Montgomery, Alabama and Mobile, Alabama
Eric J. Breithaupt, Attorney for the Committee of Unsecured Creditors, Birmingham, Alabama
Richard M. Gaal, Attorney for BioFuels Operating Company, LLC and BioFuels Bay Minette Operating Company, LLC, Mobile, Alabama

Cello Energy filed a chapter 11 bankruptcy case on October 19, 2010. Boykin Trust and Jack Boykin filed chapter 11 bankruptcy cases on October 22, 2010. The cases were administratively consolidated on December 3, 2010 so that all hearings and actions in each case were noticed in the other cases and matters were handled, when appropriate, in a joint way. The cases are before the court on the confirmation hearing on the joint plan the debtors proposed, as well as hearings on several adversary proceedings that relate to confirmation issues and hearings on motions to dismiss or convert some of the cases as well.

Cello Energy is a company that owns technology it developed that it claims details a process to turn cellulosic materials into fuel. Cello is owned by Boykin Trust. Jack Boykin was the sole owner of Boykin Trust. Jack died on August 25, 2011 and his

estate is being probated. There is a dispute about whether the process that Cello has, can, or will ever work. This court need not decide that issue for this ruling. If the process does work, the technology is very valuable. If it does not, the value of Cello is essentially limited to the value of a plant built in Bay Minette, Alabama to manufacture the fuel. The plant is shuttered at this time due to failure to produce commercial quantities of any such fuel and lack of funds to keep the plant open.

Cello Energy received $2.5 million from Parsons & Whittemore Enterprises Corporation (P&W) in April, 2007. That sum was paid by P&W for an option to buy 33% of Cello within 3 months of Cello passing ASTM tests for the production of fuel oils and gasoline with its technology (the Option Contract). On May 26, 2007, Cello entered into a Letter of Understanding with Khosla Ventures Company and then, on September 12, 2007, contracted with a subsidiary of Khosla, BioFuels Operating Company, LLC (BioFuels). The September agreement, the Manufacturing and Finance Contract (MFC), was meant to work around the P&W Option Contract and provided Cello with $12.5 million to build and make operational the Bay Minette plant. The plant was built and turned over to BioFuels to operate it. Several days later, BioFuels returned possession of the plant to Cello because BioFuels determined the plant was not yet ready for commercial production. Both P&W and BioFuel's contributions to Cello were unsecured.

There were several other entities who provided secured financing for the plant. They were: Brendle Sprinkler Company, BioFuels Operating Company, and Ted Kennedy. BioFuels provided its secured financing when it was determined that more money was needed to complete the plant, beyond the $12.5 million it had already paid. All of these parties have a security interest in the plant and equipment. BioFuels and Ted Kennedy also have a secured position in the technology.

As soon as the BioFuels' MFC was signed, P&W, Cello and BioFuels became embroiled in litigation over whether the Biofuels agreement violated P&W's Option Contract with Cello. In September 2010, after litigation in U.S. District Court, including a jury trial on some issues, a judgment was awarded to P&W against Jack Boykin, Boykin Trust and Cello Energy and Allen Boykin, son of Jack Boykin, in the amount of $2,827,123.00. An additional $7.5 million was awarded in punitive damages against all of the debtors and also Allen Boykin. No damages were awarded against BioFuels and BioFuels and P&W finally resolved all of their issues after the trial. Cello and the other debtors filed their chapter 11 cases before the appeal period expired. They intend to appeal the judgment as part of their plan.

P&W commenced a second suit against Lois Boykin, wife of Jack Boykin, and Allen Boykin, and others, alleging that they received fraudulent transfers of funds given to Cello for use in the business. On February 3, 2011, the U.S. District Court ruled that Lois Boykin and Allen Boykin did receive fraudulent transfers. The Court ordered a judgment against Lois Boykin and Allen Boykin for $10,431,560.50. Allen Boykin was also adjudged liable for $40,000 and $655,000 in transfers. The judgment was in favor of P&W, but no action has been taken on it since the claims might be an asset of Boykin Trust itself. There was not a determination of any court as to whether the judgment was properly one on which P&W could recover or whether the claims were really assets of the Boykin Trust estate (or any other of the debtor estates) that had to be used for the benefit of all creditors of Boykin Trust or the consolidated debtor entities.

P&W has also filed a suit against Jack Boykin in his individual chapter 11 case seeking to have its debt against him declared nondischargeable due to fraud and willful and malicious injury. The Disclosure Statement and his bankruptcy schedules show

limited assets. With his death, there are no real assets available to P&W if it pursues this suit.

P&W filed a suit against BioFuels asking the court to determine the validity, priority and extent of BioFuels claim and to declare that the debt to BioFuels is actually an equity interest. The Creditors' Committee had filed a similar suit earlier in the case as well.

The debtors and the Creditors' Committee for Cello jointly proposed a plan. That plan was sent to creditors for a vote. All creditors voted for the plan except the Alabama Department of Revenue, which did not vote at all, and P&W which rejected the plan. P&W also objected to the plan.

## LAW

Because the court is not confirming the debtor's plan as written, the court will focus this opinion on the reasons for the denial and not delay the opinion by writing about the other issues in the plan. The court concludes, if the areas discussed below are able to be remedied, the confirmation requirements will be able to be met. There are two reasons the Third Amended Plan cannot be confirmed.

First, the plan is not confirmable because it does not include as assets of Boykin Trust any fraudulent transfer recoveries that might be made against Lois Boykin and Allen Boykin in its analysis of liquidation or in its determination of why substantive consolidation does not prejudice P&W when it is the only substantial creditor in Boykin Trust. The fraudulent transfer claims are not theoretical. The U.S. District Court has already determined that they exist. There is no analysis of what assets Lois Boykin or

Allen Boykin might be able to contribute to a plan to obtain release of these claims or whether the debtors are assuming Boykin Trust has any interest in these claims at all.[1]

Second, the court concludes that the plan is not feasible as presently constructed. "[T]he [bankruptcy] court need not require a guarantee of success . . . , [o]nly a reasonable assurance of commercial viability is required." *Financial Security Assurance Inc. v. T-H New Orleans Limited Partnership (Matter of T-H New Orleans Ltd. Partnership)*, 116 F.3d 790, 801 (5th Cir. 1997) (citing *Matter of Briscoe Enterprises, Ltd., II*, 994 F.2d 1160, 1165-66 (5th Cir. 1993)). However, with the testimony presented at the trial of the confirmation issues, the testimony was not enough to reach that hurdle. The payments to P&W and BioFuels from a license of the technology are too speculative based on the information provided about B.e Energy and the bonding issues. The only witness as to feasibility was Allen Boykin and his knowledge of the technology licensing arrangement was limited. There was no evidence about the status of the bond approval by Johnson County, Texas or the other county mentioned. The licensing agreement was not provided to the court. The Court also concludes that using $250,000 for payments to Allen Boykin and other parties was not shown to be appropriate, at least without more evidence. Allen Boykin testified that he needed $144,000 per year for his expenses, but that sum was not shown to be appropriate for the work he would be required to do or appropriate for the industry. The court was also not satisfied that an office, a secretary and/or benefits were necessary items to fund at the expense of creditors. It was also not clear why Allen Boykin would not be receiving consulting fees from B.e. Energy. The time frame Cello

---

[1] The plans says that all claims against the debtors will be discharged and released in exchange for the rights given to creditors in the plan. Article 10, 10.1. The plan does not specifically state that any claims against Lois and Allen Boykin are discharged. It cannot do so since they are not debtors. However, since the District Court judgment is in the name of P&W but the fraudulent transfer claims are, at least arguably, claims of the Boykin Trust, the court is not sure what the debtors are proposing as to these claims. Does P&W retain the right to enforce its judgment? Is the Boykin Trust bankruptcy estate retaining this claim? If so, how is it dealt with?

has to bring the B.e. Energy deal to conclusion is unlimited and that is not appropriate, particularly in light of the unknown potential for P&W to collect on its fraudulent transfer judgment if the debtor cases are dismissed. This is especially true if, under the plan, P&W is giving up any interest in fraudulent transfer recoveries that the Boykin Trust might make against Lois or Allen Boykin, recoveries that the court has not been able to assess.

Even if P&W loses on appeal and has no claim against Boykin Trust, the issue of the fraudulent transfers is still relevant. If Boykin Trust is substantively consolidated with Jack Boykin and Cello, all of the creditors other than P&W would have a right to the proceeds of the transfers and, therefore, the viability of recovery of these transfers must be considered.

THEREFORE IT IS ORDERED that:

1. Confirmation of the Third Amended Plan of the debtors and the Committee of Unsecured Creditors is DENIED;

2. The debtors and Committee may file an amended plan, if they wish, by February 27, 2012;

3. A status hearing on any amended plan is set for February 28, 2012 at 8:30 a.m., if such an amended plan is filed;

4. The Court will not rule on the remaining confirmation issues and other matters under advisement until after February 28, 2012 when the court and interested parties determine how to proceed in light of any amended plan.

Dated: January 25, 2012

MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE